**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

NAPOLEON JONES,

Plaintiff,

Case No.: 25-CV-01886

v.

BRANDON SHAYHORN, BRETT KROMREY, LISA PANAS, CORY FARRELL, JARRETT SCHEELK, WAUKESHA COUNTY, JOHN DOES 1-5, and WISCONSIN MUNICIPAL MUTUAL INSURANCE COMPANY,

Defendants.

# AMENDED COMPLAINT

**NOW COMES** Plaintiff, Napoleon Jones, by and through his attorneys, Cade Law Group LLC, and files this complaint against the Defendants, alleges and shows to the Court as follows:

## INTRODUCTION

1. This is a civil rights action arising from an unlawful stop, detention, and arrest of Plaintiff, Napoleon Jones, by Defendant Brandon Shayhorn and Defendant Brett Kromrey who were employed as deputies with the Waukesha County Sheriff's Department.

2. After Plaintiff lawfully recorded a traffic stop involving an unrelated party, Shayhorn retaliated by following Plaintiff into a private parking lot, fabricating a basis for a traffic stop, and escalating the encounter without justification.

3. Shayhorn and Kromrey forcibly removed Plaintiff from his car, handcuffed and transported him to jail without probable cause, without advising him of his rights, and without allowing him to make a phone call.

4. As a result of Shayhorn and Kromrey's conduct, Plaintiff's constitutional right of freedom from unreasonable searches and seizures was violated and he seeks to redress under 42 U.S.C. § 1983 and applicable state law for the violation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

5. All of the Defendants are sued in their individual and official capacities. At all relevant and material times, these Defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors, or employees of Waukesha County; within the scope of their employment as representatives of public entities, as defined in 42 U.S.C. § 12131(1); and were objectively unreasonable to the constitutional, civil, and statutory rights of Plaintiff.

## PARTIES

6. Plaintiff Napoleon Jones ("Plaintiff" or "Napoleon") is an adult residing in the Eastern District of Wisconsin.

7. At all times material hereto, Plaintiff was entitled to Constitutional Rights, pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and to not be subjected to illegal searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

8. Defendant Brandon Shayhorn ("Shayhorn") is employed by the Waukesha County Sheriff's Department as a Deputy for the County of Waukesha, Wisconsin. At all

times relevant to this complaint, Shayhorn was acting under color of law and within the scope of his employment as a Deputy for the Waukesha County Sheriff's Department.

9. Defendant Brett Kromrey ("Kromrey") is employed by the Waukesha County Sheriff's Department as a Deputy for the County of Waukesha, Wisconsin. At all times relevant to this complaint, Kromrey was acting under color of law and within the scope of his employment as a Deputy for the Waukesha County Sheriff's Department.

10. Defendant Lisa Panas ("Panas") is employed by the Waukesha County Sheriff's Department as a Captain. At all times relevant to this complaint, Panas was acting under color of law and within the scope of her employment as a Captain for the Waukesha County Sheriff's Department.

11. Defendant Cory Farrell ("Farrell") is employed by the Waukesha County Sheriff's Department as a Lieutenant. At all times relevant to this complaint, Farrell was acting under color of law and within the scope of his employment as a Lieutenant for the Waukesha County Sheriff's Department.

12. Defendant Jarrett Scheelk ("Scheelk") is employed by the Waukesha County Sheriff's Department as a deputy. At all times relevant to this complaint, Scheelk was acting under color of law and within the scope of his employment as a deputy for the Waukesha County Sheriff's Department.

13. Defendant Waukesha County, with its executive offices located at 515 West Moreland Boulevard, Waukesha, WI 53188, is and was at all material times hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. Waukesha County established, operated, and maintained the Waukesha County Sheriff's Office ("WCSO") at all times material hereto. Waukesha County contracts with the Village of

Lisbon for WCSO to provide law enforcement services to the Village of Lisbon. Waukesha County is ultimately responsible for the training, supervising, and discipline of WCSO employees and the creation and implementation of its policies and procedures.

14. Defendant John Does 1-5 are, upon information and belief, adult citizens of the State of Wisconsin and employees of Waukesha County. These individuals may have used the FLOCK system to track Plaintiff, as identified more fully below. Their identities are presently unknown; the Complaint will be amended to identify those who had knowledge of the facts relevant to this lawsuit and failed to act properly.

15. Defendant Wisconsin Municipal Mutual Insurance Company ("WMMIC"), upon information and belief, is a domestic insurance company duly conducting business in the State of Wisconsin and is engaged in the business, among other things, of issuing policies of insurance within the State of Wisconsin. Upon information and belief, proper to and including all relevant times herein, WMMIC issued a policy of liability insurance to Waukesha County and all its employees and/or agents thereof. By the terms of said policy, WMMIC agreed to pay any and all sums for which Waukesha County and/or its agents and employees might be held legally liable for injuries or damages caused by Waukesha County and/or its employees and agents. Upon information and belief, said WMMIC insurance policy was in full force and effect during all times period relevant herein. Pursuant to Wis. Stat. § 803.04, WMMIC Insurance Company is a proper party to this action.

16. On May 20, 2025, Plaintiff provided his Notice of Injury pursuant to Wis. Stat. § 893.80 to Waukesha County. Attached hereto as **Exhibit A** is a true and correct copy of his Notice of Injury.

17. On July 25, 2025, Plaintiff provided his Notice of Claim, pursuant to Wis. Stat. § 893.80 to Waukesha County. Attached hereto as **Exhibit B** is a true and correct copy of his Notice of Claim.

18. On November 12, 2025, Waukesha County denied Plaintiff's Notice of Claim.

## JURISDICTION AND VENUE

19. The Eastern District of Wisconsin has jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(1), (3), and (4), as this complaint alleges violations of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

20. Venue in the Eastern District of Wisconsin is proper under 28 U.S.C. § 1391(b)(2), as the events giving rise to this complaint occurred in the Eastern District of Wisconsin.

## STATEMENT OF FACTS

21. On May 4, 2025, Plaintiff exercised his First Amendment right and recorded Shayhorn conducting a traffic stop on public property in Sussex, WI. At no time did Plaintiff interfere or obstruct the traffic stop; Plaintiff remained at a lawful distance and merely recorded the encounter.




*Traffic stop recorded by Plaintiff*

22. Shayhorn is recorded on video giving Plaintiff a nasty look, a/k/a "mean mugging," when Shayhorn looks up from his traffic stop.



*Shayhorn "mean mugging" Plaintiff*

23. After the traffic stop concluded, Shayhorn drove his squad into the private parking lot where Plaintiff and his vehicle were located.

24. In a subsequent memorandum prepared by senior WCSO staff, Shayhorn admitted he pulled into this parking lot specifically so he could wait for Plaintiff to leave and conduct a traffic stop of his vehicle because he purportedly had flagged Plaintiff as "suspicious" and his vehicle as missing its front license plate.



*Shayhorn entering the parking lot where Plaintiff was located*



*Shayhorn entering parking lot; Plaintiff walking to his car*

25. With Shayhorn now in the parking lot, Plaintiff entered his vehicle, started the engine, and drove toward the parking lot exit. As Plaintiff did so, Shayhorn pulled behind Plaintiff's vehicle and engaged his emergency lights.



*Plaintiff driving toward exit*

26. Plaintiff stopped, while still in the parking lot, to see what Shayhorn wanted. Shayhorn activated his emergency lights and conducted a traffic stop of Plaintiff's vehicle while it was still in the parking lot.



*Shayhorn pulling behind Plaintiff with his lights activated*

27. Shayhorn specifically told Plaintiff that he stopped him because he did not have a front plate. But the only way for Shayhorn to have noticed the lack of a front plate is after Shayhorn saw Napoleon filming him, which Shayhorn admitted in his deposition.

28. Shayhorn also claims he stopped Plaintiff because his license plates were obscured; however, Plaintiff's vehicle was brand new. Plaintiff did not have a front or rear license plate but did have a temporary plate taped to his rear window that was properly affixed and clearly visible. And, by law, Plaintiff would not have either front or rear plates. More importantly, at no point in time up to and including turning on his emergency lights could Shayhorn have been able to see the temporary tag, regardless of how it was displayed, from his vehicle, more than 40 feet away. The claim about the tag was a pretext for an illegal act.




*Plaintiff's vehicle and the license plate assigned to it in its rear window*

29. Shayhorn demanded identification from Plaintiff. Plaintiff remained calm and respectful, asked for a supervisor multiple times, and stated he would provide identification once a supervisor arrived.




*Shayhorn demanding ID; Plaintiff respectfully asking for a supervisor*

30. Shayhorn denied he needed to call a supervisor, and continued to demand a driver's license from Plaintiff, while Plaintiff repeatedly requested a supervisor.

31. Without consent or probable cause, Shayhorn, with assistance from Kromrey, opened Plaintiff's driver door, forcefully pulled Plaintiff from his vehicle, and handcuffed him.




*Shayhorn pulling Plaintiff out of his vehicle*




*Kromrey assisting Shayhorn in removing Plaintiff from his vehicle*

32. Plaintiff was subsequently subjected to an unlawful search of his person. Deputies Shayhorn and Kromrey located Plaintiff's wallet and driver's license, removed it from his person, and they used his license to identify him.

33. Deputies Shayhorn and Kromrey arrested Plaintiff for resisting and obstructing based solely on his refusal to provide identification during an unlawful and retaliatory stop in a parking lot, where Shayhorn did not have legal authority to have initiated the stop in the first place.

34. Plaintiff was never informed of his rights under Miranda or permitted to make a phone call.

35. While handcuffed and detained, Plaintiff requested "Siri" (from his iWatch) to call his mother, Julie Jones. Ms. Jones arrived on scene shortly after and was told by Shayhorn that Plaintiff was "not under arrest".

36. Despite this statement, Plaintiff remained handcuffed and was placed in a squad car and transported to the Waukesha County Jail for processing as if under arrest.

37. Plaintiff went to the Waukesha County Sheriff's Department on May 5, 2025, the day after he was illegally arrested, and filed a citizen's complaint against Shayhorn.

38. Subsequently, Panas purportedly placed Farrell in charge of investigating Plaintiff's citizen complaint.

39. In a post-arrest memorandum, dated May 6, 2025, Lieutenant Krause of WCSO, a supervisor to Shayhorn and Kromrey, specifically noted that he informed Shayhorn that there was no legal basis for Shayhorn to compel Plaintiff to identify himself and that Shayhorn had not conducted a legal traffic stop:

> *"Lt. Haferman began to review Shayhorn's report and then asked me questions regarding it. Lt. Haferman advised that the traffic stop took place in a parking lot for a vehicle registration violation. Lt. Haferman and I called Shayhorn to inquire about the details regarding the stop and arrest. Shayhorn advised he was on a different traffic stop when he observed a male filming him from a parking lot. Shayhorn advised the parking lot was to a strip mall of businesses but was open to the public. Shayhorn observed the vehicle had no front plate and a temporary plate that was illegible. Shayhorn stated he got behind the suspect vehicle, which then stopped prior to exiting from the parking lot, at which point he activated his emergency lights. Shayhorn was asked if the suspect interfered with his previous traffic stop which he stated the suspect did not. Shayhorn stated that he thought he could enforce the traffic laws in a parking lot since it was public. I advised him that the parking lot was not public property, that it was privately owned but open for public use as its for business and not gated or secured. With that, Shayhorn was reminded that according to Wisconsin statute, that there are only a few traffic laws that can be enforced in a situation like that: Operating While Impaired, Reckless Driving, parking on a fire hose/fire lane violation, and handicap parking violations. Shayhorn confirmed that none of those violations were observed.* ***Shayhorn was advised that he did not have a lawful traffic stop thus the suspect could not be compelled to produce his identification and it was not a consensual encounter since he activated his emergency lights****."*

(emphasis added). Attached hereto as **Exhibit C** is the true and correct copy of the memorandum dated May 6, 2025.

40. In a separate memorandum, dated May 10, 2025, Lieutenant Farrell of WCSO noted that he had decided on May 4, 2025 that “based upon the totality of the circumstances, discretion would be utilized and charges for obstructing/resisting would not be forwarded, and [Plaintiff] would be released from custody.” Attached hereto as **Exhibit D** is the true and correct copy of the memorandum dated May 10, 2025.

41. At his deposition on July 2, 2026, Kromrey admitted multiple times that the parking lot where Napoleon was arrested is private property, and absent certain exceptions, such as parking in a handicap space, parking in a fire lane, or being observed to be drunk, none of which exceptions are applicable here, a law enforcement officer such as Shayhorn did not have legal authority to stop, detain or even arrest Plaintiff, or demand his driver’s license.

42. In addition to the above, materials provided by the Waukesha County Sheriff’s Office pursuant to an open records request included a photograph of Plaintiff’s vehicle dated May 30, 2025 using a Flock Automatic License Plate Reader,[1] clearly indicating Plaintiff was being tracked in retaliation for exercising his First Amendment right of recording a traffic stop.

43. More specifically, after Plaintiff filed his citizen’s complaint against on May 5, 2025, Farrell, personally, and in conjunction with Panas, Shayhorn and Scheelk, directed the deputies to investigate Plaintiff’s vehicle using FLOCK as part of the citizen complaint, even thought there is no FLOCK camera in the parking lot where the arrest took place.

[1] https://www.aclu.org/news/privacy-technology/flock-roundup

44. Panas, Shayhorn and Scheelk, at Farrell's behest, utilized the FLOCK system and did multiple searches for Plaintiff's white BMW, and on dates not relevant to the underlying arrest and citizen complaint (i.e. on dates other than May 4 and May 5). The searches for Plaintiff's vehicle were not performed for a legitimate law enforcement purpose. Attached hereto and incorporated herein as **Exhibit E, and marked as Exhibit 8 in Shayhorn's deposition,** is a true and correct copy of the searches performed by these members of the Waukesha Sheriff's Department utilizing the FLOCK system.

45. Use of the Flock camera system is a search under the 4th Amendment.

46. At her deposition on July 20, 2026, Panas admitted that use of the Flock system would not prove that Napoleon committed a crim in the parking lot, and that even if the camera system showed his temporary tag was not properly displayed on May 3, or earlier, it would not prove that the temporary tag was not properly displayed on May 4. She also admitted the opposite – even if the tag was properly displayed on May 3, it would not prove that it was properly displayed on May 4.

47. The Flock search was another means to attempt to find a potential crime against Napoleon rather than a proper use of the camera system.

48. Plaintiff is a Navy veteran who suffers from diagnosed PTSD. He has had to seek psychiatric support and intervention because his PTSD was triggered by the encounter with Deputies Shayhorn and Kromrey.

## <u>CLAIMS</u>
## COUNT I – UNREASONABLE SEARCH AND SEIZURE
## (Against Shayhorn and Kromrey)

49. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

50. The Fourth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures.

51. Shayhorn <u>and Kromey,</u> acting under color of state law and in his capacity as a for the Waukesha County Sheriff's Department, acted contrary to 42 U.S.C. § 1983 and the Fourth Amendment by unlawfully frisking and searching Plaintiff's person.

52. Shayhorn, acting under color of state law and in his capacity as a for the Waukesha County Sheriff's Department, acted contrary to 42 U.S.C. § 1983 and the Fourth Amendment by unlawfully searching Plaintiff's car.

53. Shayhorn unlawfully extended an already illegal traffic stop to an unlawful arrest lacking probable cause contrary to 42 U.S.C. § 1983 and the Fourth Amendment.

54. Shayhorn and Kromrey's conduct directly caused Plaintiff to be wrongfully stopped, detained, and arrested.

55. Shayhorn deprived Plaintiff of equal protection of the law contrary to 42 U.S.C. § 1983 and Equal Protection Clause of the Fourteenth Amendment.

56. As a direct result of Shayhorn and Kromrey's actions, Plaintiff suffered damages including loss of liberty, emotional distress, reputational harm, physical discomfort and emotional distress.

**COUNT II - 42 U.S.C. § 1983 – False Arrest/Illegal Detention**
**(Against Shayhorn)**

57. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

58. Shayhorn falsely arrested and unlawfully detained Jones, without probable cause, as Jones was on private property, and Shayhorn did not have legal grounds to stop him, let alone seize, handcuff and arrest him, and subsequently book him into the Waukesha County Jail.

59. Shayhorn knew or should have known that he did not have a legal right to demand Plaintiff's drivers license for identification purposes while Jones was on private property and because the encounter not consensual, as Shayhorn had initiated his squad vehicle's lights.

60. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

61. As a direct result of Shayhorn's actions, Plaintiff suffered damages including loss of liberty, emotional distress, reputational harm, physical discomfort and emotional distress.

**COUNT III - 42 U.S.C. § 1983 - First Amendment Violation**
**– Freedom of Speech, Association and Peaceful Assembly**
**(Against Shayhorn)**

62. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

63. Plaintiff's decision to videotape and photograph Shayhorn's traffic stop is an act of expression protected by the First Amendment to the United States Constitution.

64. At all times relevant to the allegations in this Complaint, Shayhorn acted

under color of state law, within the course and scope of his employment, and in his capacity as a WCSO deputy.

65. Shayhorn is a “person” under 42 U.S.C. § 1983.

66. The First Amendment’s robust free-speech protections apply equally to both members of traditional media and other members of the public, including independent journalists and citizens.

67. Shayhorn did not have any compelling governmental reason—or any legitimate governmental reason at all—for seizing and arresting Plaintiff.

68. Shayhorn’s conduct was unconstitutional.

69. The actions of Shayhorn are expected to chill a reasonable person from engaging in an activity protected by the First Amendment, such as filming police interactions with citizens.

70. Plaintiff’s manner of expression, filming a traffic stop, is on a matter of public concern and did not violate any laws.

71. Plaintiff’s expressions occurred at a traditional public forum.

72. Shayhorn’s actions were a content-based and/or viewpoint-based restriction of Plaintiff’s expressions.

73. At the time when Shayhorn seized Plaintiff, he had a clearly established constitutional right under the First Amendment to the United States Constitution to gather, express himself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

74. Shayhorn engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff’s constitutional rights.

75. Shayhorn’s herein described acts or omissions were the moving force and

the legal, direct, and proximate cause of Plaintiff's injuries, damages, and losses.

76. Shayhorn's intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

77. For these violations of his First Amendment rights, Plaintiff is seeking, where available, damages, declaratory relief, and injunctive relief against Defendant Shayhorn.

**<u>COUNT IV</u> – NEGLIGENT HIRING, TRAINING, AND SUPERVISION**
**(State Law Claims against Waukesha County)**

78. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

79. At all material times hereto, Defendant Waukesha County, through its Sheriff's Office, owed a duty to the public, including Plaintiff, to exercise reasonable care in the hiring, training, supervision, and retention of its law enforcement officers, including <u>Panas, Farrell,</u> <u>Scheelk,</u> Shayhorn and Kromrey.

80. Waukesha County knew, or in the exercise of reasonable care, should have known that its failure to adequately train, hire, supervise, and discipline officers created foreseeable risk that constitutional rights, including those of Plaintiff, would be violated.

81. Waukesha County breached its duty by negligently hiring, training, and supervising its deputies, including <u>Panas, Farrell,</u> <u>Scheelk,</u> Shayhorn and Kromrey.

82. Specifically, Waukesha County failed to properly train deputies regarding the lawful basis for traffic stops, detentions, arrests, and searches, train deputies regarding the public's constitutional right to record law enforcement officers in the performance of their duties, train deputies regarding the proper procedures for use of

force, train deputies regarding advising individuals of their rights, and adequately supervise, discipline, and retrain deputies who engage in unlawful, retaliatory, or abusive conduct.

83. Waukesha County further failed to train its employees as to the proper basis to utilize the Flock system, and the failure to train resulted in these defendants using the system to search for Napoleon's vehicle without probable cause or legal justification to do so.

84. Waukesha County and Village of Lisbon's negligent hiring, training, supervision, and retention of Panas, Farrell, Scheelk, Shayhorn and Kromrey was a direct and proximate cause of the unlawful stop, detention, and arrest of Plaintiff.

85. As a direct and proximate result of Waukesha County's negligence, Plaintiff was subjected to an unlawful stop, unlawful detention, retaliatory arrest, and suffered damages including loss of liberty, emotional distress, and other injuries to be proven at trial.

**COUNT V – 42 U.S.C. § 1983 - RETALIATION**
**(Waukesha County, Panas, Farrell, Scheelk, Shayhorn and John Does 1-5)**

86. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

87. Waukesha County is using an Automatic License Plate Reader ("ALPTR") from a company known as Flock to track certain license plates in Waukesha County.

88. The Flock ALPR is designed to continuously read and record license plates, purportedly for law enforcement to track vehicles operated individuals who have committed a crime. The system also allows law enforcement to input a license plate

number and have the system alert when it spots or reads a license plate of an operated vehicle to have the exact or similar license plate.

89. The only purpose to pull up and search for a license plate is because of a belief that an individual has committed a crime. The FLOCK system is not designed (yet) to deal with real time crimes or tracking.

90. Thus, the only reason for Plaintiff's vehicle to have been tracked and identified, and such information contained in the Waukesha County records is because someone employed by Waukesha County, John Does 1-5, including Panas, Farrell and Shayhorn, conducted a search to find and locate Plaintiff's license plate after the incident occurred on May 4, 2025 and with no evidence that Plaintiff committed a crime that would justify the use of a search for his license plate.

91. At all times relevant to the allegations in this Complaint, Defendants acted under color of state law, within the course and scope of their employment, and in their capacities as employees of Waukesha County.

92. Defendants are "persons" under 42 U.S.C. § 1983.

93. Defendants' actions in tracking Plaintiff constitutes unlawful retaliation for the exercise of his First Amendment rights.

94. Defendants exhibited an animus against Plaintiff's exercise of his First Amendment Rights and his filing of a citizen's complaint on May 5, 2025, and utilized the force of the State against Plaintiff in retaliation. Defendants also exhibited animus against Napoleon for his filing of a citizens complaint on May 5, 2025.

95. The actions of Defendants – specifically, tracking a person's movements – can be expected to chill a reasonable person and a person of ordinary firmness from

engaging in activity protected by the First Amendment, including filming law enforcement officers and reporting misconduct.

96. Plaintiff's expression was on a matter of public concern and did not violate any law.

97. Plaintiff's expression occurred in public.

98. Defendants jointly and on their own accord responded to Plaintiff's First Amendment protected activity with retaliation, by tracking his physical movements solely for the person to harass or otherwise intimidate Plaintiff, or to deter him and others similarly situated, from filming law enforcement officers and reporting misconduct.

99. By unlawfully using "force" against Plaintiff, by arresting and seizing him, among other things, Defendants sought to punish Plaintiff for exercising his First Amendment rights, to silence Plaintiff, and to deter Plaintiff from gathering and reporting in the future, and reporting misconduct.

100. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

101. Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of his First Amendment rights.

102. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

103. Defendants herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries, damages, and losses.

104. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and

immunities secured by the Constitution of the United States of America.

**COUNT VI – 42 U.S.C. § 1983 – CONSPIRACY**
**(Against Shayhorn, Farrell, Panas, Scheelk and Waukesha County)**

105. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

106. As described more fully above, Defendants deputies reached an agreement among themselves to deprive Plaintiff of his constitutional rights.

107. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

108. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

109. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employer, Waukesha County, is liable for their actions.

110. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**COUNT VII - ASSAULT**
**(Against Shayhorn)**

111. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein.

112. In pulling Plaintiff out of his vehicle without legal cause to do so, Shayhorn did commit an act of assault against Plaintiff.

113. As a result of the assault, Plaintiff was harmed in an amount to be

determined at trial by a jury.

**COUNT VI – BATTERY**
**(Against Shayhorn)**

114. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein

115. Battery is defined in Wisconsin as the intentional causation of bodily harm to the person of another without that person's consent.

116. Wisconsin permits civil claims for battery. *See* Wis. Stat. § 893.57.

117. Battery is considered an intentional tort.

118. Plaintiff did not consent to being pulled from his vehicle and handcuffed.

119. In arresting Plaintiff without a legal right to do so, Shayhorn did commit an act of battery on Plaintiff.

120. As a result of the battery, Plaintiff was harmed in an amount to be determined at trial by a jury.

**COUNT VII – FAILURE TO INTERVENE**
**(Against Kromrey)**

121. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein

122. Kromrey, during the constitutional violations, stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though he had the duty and the opportunity to do so.

123. Kromrey, acting under color of state law and in his capacity as a for the Waukesha County Sheriff's Department, acted contrary to 42 U.S.C. § 1983 and the

Fourth Amendment by unlawfully failing to intervene and prevent Officer Shayhorn's unlawful frisking and searching of Plaintiff's person.

124. Kromrey, acting under color of state law and in his capacity as a for the Waukesha County Sheriff's Department, acted contrary to 42 U.S.C. § 1983 and the Fourth Amendment by unlawfully failing to intervene and prevent Officer Shayhorn's unlawful arrest of Napoleon.

125. Kromrey could have instructed Shayhorn to let Plaintiff go free or instructed Shayhorn that he did not have a legal right to remove Plaintiff from his vehicle, but failed to do so.

126. The misconduct described was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and/or in total disregard of the truth and of Plaintiff's innocence.

127. As a result of Kromrey's failure to intervene to prevent the violations of Plaintiff's constitutional rights, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, forced and involuntary prison labor, and other grievous and continuing injuries and damages to be determined at trial.

**COUNT VIII – DIRECT ACTION STATUTE**
**(Against WMMIC pursuant to Wis. Stat. § 632.24)**

128. Plaintiff repeats and realleges the allegations contained in the proceeding paragraphs as if fully stated herein

129. WMMIC is liable to Plaintiff for damages suffered as a result of Defendants' actions and inactions, as alleged in this Complaint, up to the amount of the applicable insurance policies that Defendants has/had with WMMIC.

130. At all material times and upon information and belief, WMMIC had in full force and effect one or more policies of insurance that provided coverage to each of them, insuring them against liability for their negligence and the negligence of their agents and employees, and agreeing to pay any and all amounts that Defendants and their agents and employees may become legally obliged to pay for the aforementioned damages.

131. Pursuant to Wis. Stat. §803.04, Defendants WMMIC is a proper party to this action. Pursuant to Wisconsin's Direct-Action Statute, Wis. Stat. § 632.24, Plaintiff is allowed to maintain this lawsuit directly against Defendant WMMIC.

## RELIEF REQUESTED

Plaintiff respectfully requests that this court enter judgment for him against each defendant and award the following relief:

a. An order awarding damages for physical discomfort;

b. An order awarding damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life in an amount to be determined by a jury;

c. An order awarding punitive damages in an amount to be determined by a jury;

d. An order awarding taxable costs and disbursements;

e. An order awarding attorney fees and expert fees; and

f. An order awarding such other and further relief as deemed necessary and appropriate by the court.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all facts and damages herein.

Dated this July 31, 2026.

**CADE LAW GROUP, LLC**
Attorneys for Plaintiff

By: *Electronically signed by Nathaniel Cade, Jr.*
Nathaniel Cade, Jr. SBN 1028115
Annalisa Pusick SBN: 1116379
PO Box 170887
Milwaukee, WI 53217
P: (414) 255-3802
F: (414) 255-3804
E: nate@cade-law.com
annalisa@cade-law.com