**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

NAPOLEON JONES,

Plaintiff, Case No.: 2:25-CV-01886

v.

BRANDON SHAYHORN et al.

Defendants.

---

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS (ECF 42)

---

Plaintiff Napoleon Jones, by and through his undersigned counsel, files this brief in response to Defendants' partial motion to dismiss. ECF 42. For the reasons stated below, Plaintiff respectfully requests that this Court deny County Defendants' motion.[1]

## INTRODUCTION AND FACTUAL BACKGROUND [2]

This case arises from a series of events that began when Plaintiff Napoleon Jones exercised his First Amendment right to record a law enforcement officer's interaction with another citizen on May 4, 2025 in Sussex, Wisconsin. What began as a concerned citizen's recording of law enforcement escalated into an unlawful traffic stop, detention, arrest, booking, and eventual retaliation with use of surveillance technology. Jones alleges that the initial stop was prompted by his decision to record Deputy Shayhorn and that the stated reasons for the stop were pretextual. And, after Jones was released from

---

[1] Defendants' motion seeks dismissal only of Claims IV, V, and VI in Plaintiff's Amended Complaint. All other claims are not impacted by this motion.

[2] When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991).

jail, he exercised another protected right: he filed a citizen complaint concerning the conduct of the Waukesha County Sheriff's Office ("WCSO") deputies during the May 4 stop. ECF 39 (hereafter "Amended Compl."), at ¶¶ 20-35, 37-38.

The circumstances surrounding the May 4 encounter subsequently were investigated by WCSO personnel. Jones alleges that Lieutenant Farrell was in charge of investigating the citizen complaint and that, two days later on May 6, 2025, a supervisory memorandum concluded that Deputy Shayhorn had no lawful basis to stop Jones for the alleged traffic violations and that Jones could not lawfully be compelled to identify himself under those circumstances. *Id.*, ¶¶ 39-40; *see also* Ex. C-D. Farrell likewise documented that he had determined on May 4 that charges for obstructing or resisting would not be forwarded to the district attorney and Jones would be released from custody. *Id.*, ¶ 40.

However, the unconstitutional conduct did not end with Jones' release from jail. After he filed his citizen complaint and while the WCSO was investigating that complaint, Lieutenant Farrell directed WCSO personnel - including Defendants Panas, Shayhorn, and Scheelk - to investigate Jones' vehicle through the County's FLOCK automated license-plate-reader system ("ALPR").[3] *Id.*, ¶¶ 42-44. According to the Amended Complaint and deposition testimony, WCSO personnel conducted numerous searches of FLOCK records concerning Jones' vehicle, almost all involving searches occurring on dates unrelated to the May 4 traffic stop. *Id.*, ¶¶ 43-47. Plaintiff alleges that these searches were not undertaken for a legitimate law-enforcement purposes but instead, constituted

[3] FLOCK is a type of ALPR that captures images of vehicles and their license plates as they pass by a given location where the ALPR is located. *See* https://www.flocksafety.com/

an effort to find a potential traffic offense involving Jones *after* he had complained about the conduct of WCSO personnel. *Id.*, ¶¶ 45-47.

The Amended Complaint further alleges that the FLOCK searches were part of a broader course of retaliatory conduct. Jones alleges that he was stopped and arrested after recording Shayhorn, that he subsequently filed a citizen complaint concerning that conduct, and that Defendants thereafter took additional actions directed toward Jones and his vehicle. Jones alleges that these actions were intended, at least in part, to punish him for exercising his First Amendment rights, silence him, and deter him from engaging in future protected activity. *Id.*, ¶¶ 87-104.

Jones also alleges that the conduct at issue was not merely the product of an isolated individual decision. The Amended Complaint states that Waukesha County was responsible for the hiring, training, supervision, discipline, and retention of the Sheriff's Office personnel involved and that the County failed to adequately train and supervise its employees concerning, among other things, traffic stops, detention and arrest procedures, the public's right to record law enforcement, supervision and discipline, and the proper use of the FLOCK system. *Id.*, ¶¶ 79-85. Jones alleges that these deficiencies caused and contributed to the constitutional and common-law violations he alleged. *Id.*, ¶¶ 82-85.

The chronology of the involvement between Jones and WCSO is significant. Jones first exercised a constitutionally protected right by recording law enforcement activity. He was then subjected to a stop, detention, and arrest that he alleges were unlawful and retaliatory. The following day, he exercised another protected right by filing a citizen complaint. WCSO supervisory personnel then investigated the citizen's complaint, and—

according to the Amended Complaint—directed or participated in subsequent searches of Jones's vehicle through the FLOCK system. *Id.*, ¶¶ 20-47. Plaintiff alleges that these actions were undertaken without a legitimate law-enforcement purpose – considering there are over 100 FLOCK searches for Jones' vehicle and Jones was arrested in parking lot – and as part of an effort to punish and deter him for exercising his First Amendment rights. *Id.*, ¶¶ 87-104.

Defendants' partial Motion to Dismiss asks the Court to view these events in isolation. Defendants characterize their FLOCK searches as nothing more than historical database queries, separate from the May 4 encounter and incapable of supporting a retaliation claim. They likewise contend that Plaintiff's negligence claim is barred because his statutory notice did not identify every legal theory or later-discovered acts on which Count IV relies. But those arguments disregard the factual allegations and court record, and the factual inferences that are to be drawn in favor of Jones, as set forth in the Amended Complaint. At the current pleading stage, the Court must accept Plaintiff's well-pleaded factual allegations as true and draw reasonable inferences in his favor. Viewed in that light, the Amended Complaint alleges a connected course of conduct involving protected First Amendment activity, retaliatory governmental action, a citizen complaint, a mismanaged supervisory investigation, and subsequent targeted searches of Plaintiff's vehicle. Those allegations are sufficient to state the claims challenged by Defendants' Motion to Dismiss.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. Specifically, whether the complaint states a claim upon which relief can be

granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Dismissal is only appropriate at the pleading stage if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. *See Strasburger v. Board of Educ*., 143 F.3d 351, 359 (7th Cir. 1998).

Federal Rule of Civil Procedure 8 governs which facts a plaintiff is required to plead in a complaint. Rule 8 only requires “a short and plain statement of the claim showing that the pleader is entitled to relief” and to “give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.” The federal rules “do not require a plaintiff to include much factual detail in a complaint.” *Doe v. Purdue Univ*., 928 F.3d 652, 665 (7th Cir. 2019); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the plaintiff is not required to make “detailed factual allegations”). Unlike "fact" pleading, required in some states, "notice" pleading does not require the plaintiff to "plead law or match facts to every element of a legal theory." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). A complaint is not required to allege all, or any, of the facts logically entailed by the claim and a plaintiff is not required to plead evidence. *Id*. (citing *American Nurses' Assn. v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). The plaintiff may plead conclusions, so long as "the conclusions . . . provide the defendant with minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995).

A motion to dismiss is a small hurdle for a Plaintiff to defeat considering the allegations in the Complaint must be accepted as true. *See Tankersley v. Albright,* 514

F.2d 956, 964 n.16 (7th Cir.1975) (internal quotations omitted) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed."). Not only has Plaintiff's First Amended Complaint far exceeded the standards of Federal Rule of Civil Procedure 8, but Plaintiff also has sufficiently pled facts that, together with reasonable inferences, demonstrate claims upon which relief may be granted when accepted as true to withstand the low bar of a Rule 12(b)(6) motion. Here, this Court should find that Claims IV, V, and VI are all supported on a bona fide factual basis and are strong enough to withstand a motion to dismiss.

## ARGUMENT

### I. PLAINTIFF'S NOTICE OF CIRCUMSTANCES SUBSTANTIALLY COMPLIED WITH WIS. STAT. § 893.80(1d)(a).

#### a. Defendants Improperly Seek to Convert an Affirmative Defense into a Rule 12(b)(6) Pleading Requirement.

Defendants seek dismissal of Count IV (Negligent Hiring, Training, and Supervision against Waukesha County) pursuant to Wis. Stat. § 893.80(1d)(a) under the impression that the tort was not fully contemplated or identified in Plaintiff's Notice of Circumstances served on May 20, 2025. ECF 42 p. 9-11; *see also* Amended Complaint, Ex. B. Defendants' position as to notice is flawed for several reasons.

First, compliance with the notice statutes is an affirmative defense rather than an element that must be proven or alleged through Plaintiff's complaint. The Wisconsin Supreme Court recently held that a plaintiff need not allege compliance with § 893.80(1d)(a) in the complaint and need not establish actual notice and lack of prejudice in order to survive a motion to dismiss. *See Maple Grove Country Club Inc. v. Maple Grove*

*Estates Sanitary District*, 2019 WI 43, ¶¶ 35-36, 386 Wis. 2d 425, 926 N.W.2d 184 ("Noncompliance with the notice of claim statute fits within this definition, especially given our case law determining that the statute is a " 'condition in fact requisite to liability,' but is not a condition required for stating a cause of action."), citing *Rabe v. Outagamie Cty.*, 72 Wis. 2d 492, 498, 241 N.W.2d 428 (1976) and *Majerus v. Milwaukee Cty.*, 39 Wis. 2d 311, 317, 159 N.W.2d 86 (1968). *See also Yacht Club at Sister Bay Condo. Ass'n, Inc. v. Village of Sister Bay*, 2017 WI App 65, ¶¶ 27–28. As the Court noted in *Maple Grove*, "[A]n affirmative defense is "a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim even if all allegations in the complaint are true." *Maple Grove,* 2019 WI 43, at ¶ 34, citing *State v. Watkins*, 2002 WI 101, ¶ 39, 255 Wis. 2d 265, 647 N.W.2d 244 (underling in original).

The burden to establish notice or actual notice and the absence of prejudice arises only after the governmental defendant properly raises the defense. *Id.*; *see also* Wis. Stat. § 893.80(1d)(a). The statute's two notice requirements give the governmental entity a chance to investigate potential claims, and to compromise and budget for settlement. *Bostco LLC v. Milwaukee Metro. Sewerage Dist.,* 2013 WI 78, ¶ 88, 350 Wis. 2d 554, 835 N.W.2d 160. When evaluating whether a particular notice fulfilled those purposes, "[courts] have recognized that the notice of claim provisions may be satisfied with substantial, rather than strict, compliance." *Id.; see also Townsend v. Neenah Joint Sch. Dist.*, 2014 WI App 117, ¶ 22, 358 Wis. 2d 618, 632, 856 N.W.2d 644, 651.

Consequently, Defendants cannot obtain dismissal merely by asserting that Plaintiff's notice of circumstances was insufficient or did not put them fully on notice. To the contrary, Plaintiff's notice of circumstances properly asserted the defendants to be

considered, the conduct in question, and timely served it to the appropriate parties. It also begs the question: if Plaintiff had given notice of future conduct that was in furtherance of the May 4 incident, what would the Waukesha Defendant have done? Waukesha itself as an entity cannot "obtain knowledge;" the officer-defendants involved in the arrest, detention, booking, and FLOCK searches *were* in fact put on notice because they themselves engaged in conduct related to Jones. The County was actually aware of the circumstances related to Jones, and the notice statute requires sufficient facts to consider the totality and determine whether it wishes to settle. The County had actual knowledge because it investigated the exact incident that formed the basis of the claim. That is more than sufficient to satisfy the notice requirement.

**b. The Notice of Circumstances Requirement Does Not Strictly Require Plaintiff to Identify Every Legal Theory That May Exist Later.**

The second reason Defendants' argument is flawed is because Defendants improperly conflate that the notice of circumstance must somehow also provide notice of the precise legal theories Plaintiff would ultimately plead. Section 893.80(1d)(a) requires written notice of the "circumstances of the claim;" it does not require a claimant to identify every legal cause of action or theory of liability that may later arise from those circumstances. Wisconsin courts specifically have rejected the proposition that a claimant forfeits a claim merely because the legal theory asserted in litigation was not articulated in identical terms in the notice. *See Townsend v. Neenah Joint Sch. Dist.*, 2014 WI App 117, ¶¶ 23–26.

The purpose of the notice statute is to provide the governmental entity with sufficient information to evaluate and investigate the circumstances giving rise to potential liability, not to require a claimant, before discovery has occurred, to identify every

institutional policy, training deficiency, improper or illegal act and conduct, supervisory failure, or legal theory that may ultimately prove relevant. Even so, Plaintiff's notice did contemplate the domino effect of the initial stop on May 4. Plaintiff's negligence claim arises from the County's alleged failure to exercise reasonable care in hiring, training, supervising, disciplining, and retaining the very Sheriff's Office personnel involved in the May 4 encounter and the ensuing investigation. Amended Compl., ¶¶ 79–85. More importantly, the events giving rise to Count IV did not end with the initial stop and Waukesha County knew it because its agents acted upon their own internal investigation. *See* Amended Compl. ¶¶ 37-47.

There is no question that Plaintiff accomplished the goals of the notice of injury by providing the information sufficient to fulfill the statute's requirements. The purported concern Defendants raise relates to how expansive they believe notice of circumstances needs to be to "investigate the factual basis of the negligence claim ultimately asserted." ECF 42, p. 13. But there is no question that Waukesha County had ample opportunity to review the May 4 incident at hand, be placed on notice that the circumstances disclosed will likely give rise to a lawsuit, and chose not to settle the dispute beforehand. It should come as no surprise that a variety of tort claims were more likely than not going to be contemplated in said lawsuit. Defendants' insistence that Plaintiff was required to expressly use the words "negligent hiring," "negligent supervision," or "FLOCK training" in the notice improperly elevates the statute's notice requirement into a requirement that Plaintiff plead his eventual legal theories in advance. There is no statute or case that has such a requirement. Indeed, the statute only requires that a claimant identify the circumstances (i.e. facts), not legal theories behind such circumstances ("Within 120 days

after the happening of the event giving rise to the claim, ***written notice of the circumstances*** of the claim . . . . .").

More to the point, Defendants seem to believe that a plaintiff, such as Jones, would know of the unlawful investigation into him before he files suit and conducts discovery. There is no case or statute that indicates that a claimant/plaintiff must conduct a full background investigation into all causes of action before suing a municipality under § 893.80. Here, Defendants essentially assert that Jones should have investigated and interviewed Deputy Shayhorn, for example, before filing suit to find out that Lt. Farrell instructed him to conduct FLOCK searches of Jones' vehicle after Jones filed his citizen's complaint. That is an absurd argument. There is no law compelling Shayhorn to testify via an interview as to what he was told to do before a lawsuit was filed. All § 893.80 requires is notice of bad conduct and that the municipality could be sued for the bad conduct. The unconstitutional stop, detention, arrest and subsequent jailing of Jones satisfies that bad conduct.

But, even if the Court concludes that the provided written notice of circumstances did not formally identify every circumstance alleged in Count IV, the statute expressly provides that any failures or insufficiencies with the notice would not bar an action where the government had actual notice of the circumstances and the claimant establishes that such delay or failure did not prejudice the governmental entity. Wis. Stat § 893.80(1d)(a). Specifically, subsection (1d)(a) requires that "within 120 days of the event giving rise to the claim, the plaintiff must serve on the defendant, pursuant to WIS. STAT. § 801.11, 'written notice of the *circumstances* of the claim,' signed by the plaintiff or his or her agent or attorney." *Clark v. League of Wis. Muns. Mut. Ins. Co.*, 2021 WI App 21, ¶ 13, 397 Wis.

2d 220, 959 N.W.2d 648 (citing § 893.80(1d)(a)). But, to "mitigate the potential harshness that might ensue from the strict application of this requirement, the statute contains a 'savings clause'" that excuses the "failure to provide formal notice where: (1) the defendant 'had actual notice of the claim,' and (2) the plaintiff 'shows to the satisfaction of the court that the delay or failure to give the requisite [formal] notice has not been prejudicial.'" *Clark*, 397 Wis. 2d 220, ¶14 (alteration in original; citing § 893.80(1d)(a)). In effect, the savings clause spells out the requirements for substantial compliance with the "notice of injury" requirement. *Clark*, 397 Wis. 2d 220, ¶ 14. A governmental entity is prejudiced if it is unable to adequately defend a claim because it "lacked sufficient opportunity to conduct a prompt investigation." *Id.*, ¶ 23. "The plaintiff has the burden of proving the giving of notice or actual notice and the nonexistence of prejudice." *Elkhorn Area Sch. Dist. v. East Troy Cmty. Sch. Dist.*, 110 Wis. 2d 1, 5, 327 N.W.2d 206 (Ct. App. 1982).

However, a Plaintiff is not required to demonstrate the lack of prejudice in the complaint. *Weiss v. City of Milwaukee,* 79 Wis. 2d 213, 227-28, 255 N.W.2d 496 (1977)("The plaintiff had the burden of proving the giving of notice or actual notice and the nonexistence of prejudice. The plaintiff was not required to allege those two facts, however, in the complaint.") And Defendants fail to point to any reasoning how they were truly prejudiced by the notice.

Thus, the circumstances underlying Count IV are not some wholly separate occurrence of which the County had no notice. They arise from the same governmental encounter and the County's subsequent handling of Plaintiff's citizen complaint. Plus,

because the statute expressly contemplates actual notice and lack of prejudice as an alternative to formal notice, dismissal under Rule 12(b)(6) is unwarranted.

**c. The County Cannot Require Notice of Future Conduct, And Any Factual Dispute About Prejudice Cannot Be Resolved Under Rule 12(b)(6).**

Finally, Defendants' reliance on the June 10 FLOCK searches to prove its point is particularly misplaced. Defendants emphasize that because several FLOCK searches occurred after Plaintiff served his May 20 Notice that he failed to provide sufficient notice of those searches in particular. But Plaintiff was not required to predict the future course of events or bad conduct of the Defendants and provide notice of things unknown at the time and risk not providing timely notice of the triggering event. Under Defendants' warped view of notice under § 893.80, if Defendant deputies, or their brethren law enforcement officers, decided to drive to Jones' home, harass him, stop him while in his vehicle, etc., all without legal or constitutional authority, that does not create a new 120 notice period and a separate lawsuit. It would be a pattern of harassment and conspiracy that certainly could be included in ***this lawsuit.*** The theory expounded by Defendants is nonsensical.

Nevertheless, the Amended Complaint alleges a connected, concerted sequence of events began with the May 4, 2025 encounter, followed by Plaintiff's citizen complaint, which then prompted WSCO's administrative investigation and the subsequent improper and unconstitutional use of FLOCK in connection with that investigation. Defendants themselves acknowledge the connection between these events. *See* Amended Compl. ¶¶ 37-44. The domino effect that began with May 4 is part and parcel of the constitutional and tortious claims alleged. Not to mention that Defendants' position would impose a

nearly impossible burden on all claimants if they were expected to, within 120 days of an initial governmental encounter, to identify every possible subsequent act of employees that may be later discovered through an open records request or discovery. That is not the intention of Section 893.80; Waukesha County was properly placed on notice and, at minimum, whether the later FLOCK activity constitutes a part of the factual circumstances underlying the negligence claim at issue is a fact-intensive question inappropriate for a Rule 12(b)(6) motion. This Court should deny.

## II. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM IS SUFFICIENTLY PLED AND MUST SURVIVE.

To state a First Amendment Retaliation claim, Jones had to allege that (1) he engaged in a constitutionally protected activity, (2) the Defendants subjected him to a deprivation likely to deter future speech, (3) and that Jones' protected activity was at least a motivating factor in Defendants' actions that would cause an ordinary citizen to question engaging in the same or similar conduct. *Santana v. Cook Cnty. Bd. of Rev.,* 679 F.3d 614, 622 (7th Cir. 2012).

The Amended Complaint alleges two related instances of protected First Amendment activity and retaliatory conduct. First, Jones alleges that Shayhorn responded to his protected recording of police activity with an unlawful and retaliatory stop and arrest. Second, after Jones filed a citizen complaint concerning that conduct, he alleges that Farrell and other WCSO personnel retaliated against him by using FLOCK to investigate his vehicle without a legitimate law-enforcement purpose.

### a. FLOCK was used as an improper tool in locating Jones' vehicle and in retaliation against his citizen complaint.

Defendants' attack on Count V depends largely on their characterization of the FLOCK surveillance, but they improperly narrow the First Amendment claim to one of "real-time tracking" versus the retaliation that was alleged. Specifically, defendants suggest that because the FLOCK was not being used continuously, hour by hour, to track, locate, detain, arrest, or prosecute Jones that there is no way it can be retaliatory. ECF 42, p. 14. Their contention hinges on the procedural use of technology in general versus the underlying context and purpose for using it at all. The Amended Complaint alleges that Defendants affirmatively searched historical FLOCK data concerning Plaintiff's vehicle ***after he engaged*** in protected First Amendment activity (as there is no allegation or fact that Defendants knew anything about Jones ***before his interaction with Shayhorn***), that Farrell directed those FLOCK searches in connection with the citizen complaint, and that the searches had no legitimate law-enforcement purpose. Those allegations are what must be accepted as true at the pleading stage, not the Amended Complaint's shorthand description of the technology's use or ability.

Furthermore, Defendants' motion improperly reduce the allegations of the Amended Complaint to an isolated scheme that WSCO conducted these historical FLOCK searches at random. That is not the case Plaintiff has pleaded. The Amended Complaint alleges that Plaintiff exercised his First Amendment right to record a law-enforcement encounter on May 4; that Shayhorn responded by initiating an allegedly unlawful and retaliatory stop and arrest that same day; that Plaintiff filed a citizen complaint the following day; that supervisory personnel thereafter investigated that complaint and determined that the underlying stop lacked a lawful basis; and that, *during and in connection with that investigation*, Lieutenant Farrell directed WSCO personnel

(including Panas, Shayhorn, and Scheelk) to investigate Plaintiff's vehicle through the FLOCK system. Amended Compl. ¶¶ 37-47, 87-104. This case is not about two separate matters; the continuum of May 4 is directly at issue and was the catalyst toward the retaliatory use of FLOCK.[4] Plaintiff alleges that the searches were not conducted for a legitimate law enforcement purpose, and were instead undertaken to harass, intimidate, and deter Plaintiff from exercising his First Amendment rights. That is more than sufficient to prove that, at minimum, the filing of a citizen complaint (and likely the filing of a notice of injury), trigger WSCO and its agents to "investigate" Jones via FLOCK without a legitimate purpose.

Whether that sequence of events ultimately establishes retaliation is a merits question. At the pleading stage, the Court must accept Plaintiff's allegations that the searches lacked a legitimate law-enforcement purpose and were intended to retaliate against him. Defendants' attempt to recharacterize those allegations as nothing more than isolated database queries improperly attempts resolves factual disputes and disregards the context in which the alleged searches occurred.

**b. The Amended Complaint alleges actual governmental action – not merely a subjective fear of surveillance.**

Defendants attempt to recast Count V as a claim based on Plaintiff's subjective or irrational fear that government officials might be monitoring him. ECF 42 at 15-19. That is not what Plaintiff alleges.

The Amended Complaint alleges that County employees actually accessed FLOCK records concerning Plaintiff's vehicle. Amended Compl., at ¶¶ 42-44, 90. It

[4] Again, there is no evidence (or even a tacit argument from Defendants) that they knew anything about Jones before May 4, 2025. They were not conducting FLOCK searches for crimes or violations before the May 4 encounter because they had no idea who he was before Shayhorn's traffic stop on May 4.

alleges that Farrell personally, and in conjunction with Panas, Shayhorn, and Scheelk, directed deputies to investigate Plaintiff's vehicle using FLOCK ***only after*** Plaintiff filed his citizen complaint. *Id*., at ¶ 43. The Amended Complaint further alleges that Panas, Shayhorn, and Scheelk conducted multiple searches for Plaintiff's vehicle and that those searches occurred on dates unrelated to the underlying May 4 arrest and May 5 citizen complaint. *Id*., at ¶ 44. These allegations are materially different from a case in which a plaintiff fears that the government might be watching him. Plaintiff alleges actual governmental conduct undertaken by identified governmental actors after he initiated a citizen complaint.

Defendants' reliance on *Laird v. Tatum*, 408 U.S. 1 (1972) and *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) misses the nature of the claim. Those cases do not establish that actual governmental conduct never constitutes an adverse action merely because the government did not subsequently arrest or prosecute the person whose information was obtained. Here, Jones alleges an injury that *Laird* and *Clapper* did not have. Unlike the plaintiffs in *Laird* and *Clapper*, Jones does not allege merely that he fears the government might monitor him. He alleges that government officials actually accessed information concerning his vehicle and did so after he engaged in protected First Amendment activity. Indeed, the searches for his vehicle only happened because he complained and had been arrested. That is more than just an unfounded fear.

Finally, Defendants suggest that because Jones did not receive a citation via FLOCK's use, that the searches cannot constitute advise action. ECF 42, at p. 17-19. But retaliation does not require that the conduct culminate in an additional arrest or prosecution – rather, the chilling impact of the retaliation is all that is required. *Douglas v.*

*Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Here, Jones alleges not merely an abstract or speculative fear of surveillance, but actual governmental searches for his vehicle's FLOCK records without a legitimate law enforcement purpose ***only after*** he recorded WCSO personnel, filed a citizen complaint, and after supervisory personnel had determined that the underlying traffic stop lacked a lawful basis. Amended Compl., at ¶¶ 37–47, 87–104. It suggests quite obviously that the FLOCK searches were meant to uncover something law enforcement subsequently could use against Jones to retaliate against him, and possibly use to interact with him at a later point (i.e. knowing where he normally drives in order to conjure up a basis for a new traffic stop).

**c. Qualified Immunity is Premature and Inappropriate at the Pleading Stage.**

Defendants next suggest that qualified immunity should protect the individual actors from liability at the early stages of litigation by stating that no clearly establish law informed a reasonable officer that the particular use of FLOCK alleged here constituted First Amendment retaliation. This argument fails because invoking qualified immunity at the motion to dismiss phase is almost always premature and denied, but also because Defendants' recitation of the constitutional inquiry is too narrow.

Court decisions are clear that early stages of litigation is rarely "the most suitable procedural setting to determine whether an official is qualifiedly immune" and this Court should likewise consider that the case was in early posture. *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020). It is often impossible to tell from a complaint whether qualified immunity applies. *Id.* To state a claim for relief, a plaintiff need only include enough facts about their claim "to present 'a story that holds together.'" *Id.* (quoting *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018)). This guidance exists here because the factual record

contains little to no development to allow the Court to consider its application. Although qualified immunity may be resolved at the pleading stage where the complaint itself establishes that an official is entitled to immunity, dismissal is inappropriate where the immunity determination closely depends upon factual questions, as exists here. The Amended Complaint is sufficient to allege a plausible constitutional violation rendering qualified immunity inapplicable.

Notwithstanding the above principles, qualified immunity fails on the merits. Defendants attempt to narrow the constitutional inquiry to one inextricably tied to FLOCK and its inappropriate uses – some of which the recent news has covered.[5] The relevant constitutional principle is well-established: government officials may not take adverse action against an individual in retaliation for the individual's exercise of their First Amendment rights. *See Douglas*, 964 F.3d at 646. Likewise, the right to record law enforcement activity also is clearly established*. Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). In *Alvarez*, the Seventh Circuit held that the First Amendment protects the act of recording police activity because recording is a means of gathering and preserving information concerning government officials and their conduct. 679 F.3d at 595–97. The Seventh Circuit recently reaffirmed that principle, describing *Alvarez* as establishing "a First Amendment right to record the police in the

---

[5] https://www.wisn.com/article/county-supervisor-calls-for-milwaukee-sheriff-to-stop-using-flock/73634259 (Last accessed September 10, 2026)

https://www.wisn.com/article/former-milwaukee-officer-sentenced-for-illegal-license-plate-searches/71944051 (Last accessed September 10, 2026)

https://www.jsonline.com/story/news/local/2026/08/25/milwaukee-councilwoman-urges-more-oversight-of-flock-system/91457355007/ (Last accessed September 10, 2026)

execution of their duties in public spaces." *Nicodemus v. City of S. Bend, Indiana*, 137 F.4th 654, 663 (7th Cir. 2025).

That same principle applies here. Plaintiff alleges that he recorded Deputy Shayhorn while Shayhorn was performing his law-enforcement duties while in public. Amended Compl., at ¶¶ 21–23. Plaintiff did not allege that he interfered with the traffic stop or obstructed the officers' duties, nor does Shayhorn, via an answer or otherwise, allege interference. Rather, Jones exercised the First Amendment right recognized in *Alvarez* to observe, record, and preserve information concerning police conduct. *Id.*, at ¶¶ 21–24. The Amended Complaint alleges First Amendment activity that subsequently triggered the investigation that followed, and Defendants cannot escape liability via qualified immunity because the law is clearly established that an individual may not be subjected to retaliation for exercising the First Amendment right to record police activity. *See Ashcroft v. al–Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.") Qualified immunity should be denied.

**d. Count V Retaliation against Waukesha County Likewise Survives at the Pleading Stage.**

Defendants next contend that "Count V also names Waukesha County, but the County cannot be held liable merely because its employees allegedly violated Plaintiff's rights." ECF 42, p. 21. As alleged, Count V is a retaliation claim lodged against Waukesha County, Panas, Farrell, Scheelk, Shayhorn and John Does. Amended Compl., p. 19. To be clear, Count V is not a strict *Monell* claim. Rather is alleges that the Defendants' actions retaliated against Jones after he engaged in his various forms of First Amendment

activity in ways that work against policy, procedure, and training. Waukesha County, as the entity responsible for the individually-named defendants, can be liable for the failure to ensure that those agents acted properly pursuant to their training or lack thereof. Defendants assert that Plaintiff's Amended Complaint does not plausibly allege an underlying constitutional violation or a County policy, custom, decision, or deliberately indifferent training deficiency that caused one, to withstand a motion to dismiss. But, again, Defendants miss the point. The Amended Complaint plausibly alleged multiple bases for direct action against Waukesha related to improper (or lack of) training regarding the use of FLOCK or inadequate training related to traffic stops and detentions. Indeed, the Seventh Circuit has recognized that adequately pleaded allegations concerning deficient municipal policies, training, or procedures may permit a municipal claim to proceed beyond the pleading stage. *Gibson v. City of Chicago*, 910 F.2d 1510, 1521 n.19 (7th Cir. 1990) (concluding that factual allegations were sufficient to permit a *Monell* claim to proceed beyond the pleading stage in connection with a state-created danger theory).

Here, despite the early stages of litigation where all Jones must do is surpass a small hurdle to prove plausibility of a claim, Jones points directly to the failure of Waukesha County for its training, supervision, discipline, and retention of the Sheriff's Office personnel involved in the events at issue. Amended Compl., at ¶¶ 79-83. That is a plausible allegation of a failure to train theory. Jones specifically alleges that the County failed to train its employees regarding the proper basis for utilizing the FLOCK system and that this failure resulted in the use of FLOCK to search for Plaintiff's vehicle without probable cause or legal justification. *Id.*, at ¶ 83. That is a factual allegation of a specific

training deficiency, not merely an assertion that the County should be liable because one of its employees committed a constitutional violation.

Defendants argue that Plaintiff has not identified the exact training provided, the precise deficiency in that training, prior incidents, or a history of similar FLOCK misuse. ECF 42 at 22-23. But, despite the absence of a strict *Monell* claim, Defendants seek a level of evidentiary detail that is not required to plead a plausible claim. The purpose of discovery is, among other things, to determine what training was provided, what policies governed the use of FLOCK, what supervisory mechanisms existed, who was responsible for those policies, whether the County had notice of deficiencies in its training and supervision, and so on. There is enough alleged to permit a reasonable inference that the County may be liable for the alleged constitutional violations.

Finally, Defendants argue that the repeated use of the phrase "probable cause" warrants dismissal. ECF 42, at 22-23. The Amended Complaint's allegation that employees were not properly trained concerning the lawful use of FLOCK is relevant to whether the County's training was constitutionally deficient. Whether the FLOCK searches independently violated the Fourth Amendment is not dispositive of whether inadequate training concerning the use of the system contributed to First Amendment retaliation. The relevant question is whether the alleged deficiency in training caused or facilitated the constitutional violation alleged in Count V. Accordingly, municipal liability should not be dismissed against Waukesha County.

## III. COUNT VI PLAUSIBLY ALLEGES A SEC. 1983 CONSPIRACY SUFFICIENT TO DEFEAT A MOTION TO DISMISS.

Defendants next argue that Count VI fails because Jones alleges no facts demonstrating an agreement among Defendants to violate his constitutional rights. ECF

42 at 24-28. Importantly, defendants correctly recognize that a § 1983 conspiracy may be established through circumstantial allegations. *See In re Text Messaging Antitrust Litig*., 630 F.3d 622, 628–29 (7th Cir. 2010).

To maintain his claim, Jones is only required to allege "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). To withstand a Rule 12(b)(6) motion, a complaint need only "indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him." *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007); *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2022). In other words, it need only indicate the who, what, and when.

Here, Jones satisfies that burden. He identifies that Panas placed Farrell in charge of investigating the citizen complaint; that Farrell directed the investigation; that Farrell personally, and in conjunction with Panas, Shayhorn, and Scheelk, directed deputies to investigate Plaintiff's vehicle through FLOCK; and that Panas, Shayhorn, and Scheelk conducted multiple searches of Plaintiff's vehicle that spanned timing well before and well after the May 4 traffic stop was deemed illegal. Amended Compl., at ¶¶ 38, 43-44. Jones further alleges that those searches were unrelated to the underlying arrest and were not performed for a legitimate law-enforcement purpose. Amended Compl., ¶ 44. These allegations permit an inference of coordinated action toward a common objective. This is not a case in which Plaintiff merely alleges that several government employees happened to participate in the same event. It was only after Plaintiff filed a citizen complaint that a supervisor, Farrell, directed multiple WSCO personnel to investigate his vehicle through

a surveillance database and that multiple employees then carried out those searches. Amended Compl., at ¶¶ 37-47. Defendants emphasize that the Amended Complaint does not identify a particular meeting or conversation in which the alleged agreement was formed. ECF 42 at 25–28. But an unlawful agreement need not occur in a formal meeting or be memorialized in writing. The Seventh Circuit recognizes that conspiracy may be established through circumstantial facts that collectively support an inference of agreement. *In re Text Messaging*, 630 F.3d at 628-29. Nor does a conspiracy require each of the members to have met together in concert to further the goals, or to even know about anyone else in the conspiracy. All that is required is one conspirator to be in common to the others (i.e. the wheel and spoke theory).[6] The question therefore is not whether Plaintiff has pled the "behind-the-scenes" mechanics of the alleged agreement. The question is whether the pleaded facts permit a reasonable inference that Defendants acted pursuant to a common unlawful objective. Plaintiff alleges that they did.

## IV. JOHN DOES 1-5.

Defendants seek dismissal of John Does 1–5 on the ground that Plaintiff has not identified their individual acts. ECF 42 at 29-30. But the Amended Complaint explains precisely why those defendants are presently unidentified: Plaintiff alleges that unidentified WSCO employees may have participated in the FLOCK searches, and their identities are known to Defendants rather than Plaintiff. Amended Compl., at ¶¶ 14, 90. At minimum, dismissal of the Doe defendants with prejudice is unwarranted at this stage of the litigation. If the Court concludes that Plaintiff must plead additional identifying facts,

---

[6] A "hub and spoke" conspiracy is "an arrangement in which a core conspirator ... moves from 'spoke to spoke directing the functions of the conspiracy.'" United States v. Approximately $659,990.83 in U.S. Currency in TD Ameritrade Acct. Ending in No. 0920 Held in the Name of John K. Perry, No. 07-C-0264, 2008 WL 794538, at *4 (E.D. Wis. Mar. 20, 2008)(internal citations omitted).

Plaintiff will request leave of Court to do so under Rule 15 to amend following limited discovery directed to the FLOCK audit records, user information, and identities of the employees who conducted the searches.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court **DENY** Defendants' Partial Motion to Dismiss in its entirety.

Dated this 10th day of September, 2026


**CADE LAW GROUP LLC**
Attorneys for Plaintiff

By: *<u>/s/ Annalisa Pusick</u>*
Nathaniel Cade, Jr. SBN: 1028115
Annalisa Pusick SBN: 1116379
PO Box 170887
Milwaukee, WI 53217
P: (414) 255-802
F: (414) 255-3804
E: nate@cade-law.com
annalisa@cade-law.com